<table>
<tr><td colspan="2">Estado Libre Asociado de Puerto Rico<br>**TRIBUNAL DE APELACIONES**<br>**PANEL V**</td></tr>
<tr><td>Roberto Feria Cendoya<br><br>**Recurrente**<br><br>V.<br><br>Junta de Directores y/o Consejo de Titulares del Condominio Mar de Isla Verde<br><br>**Recurrida**</td><td>KLRA202500293</td><td>**REVISIÓN ADMINISTRATIVA**<br>Procedente del Departamento de Asuntos al Consumidor<br><br>Querella Núm.: C-SAN-2024-0018525<br><br>Sobre: Condominio</td></tr>
</table>

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2025.

El 22 de mayo de 2025, el Sr. Roberto Feria Cendoya (señor Feria o el recurrente) compareció ante nos mediante un *Recurso de Revisión Judicial* y solicitó la revisión de una *Resolución Sumaria* que se dictó el 14 de marzo de 2025 y se notificó el 17 de marzo de 2025, por el Departamento de Asuntos del Consumidor (el DACo). Mediante el aludido dictamen, el DACo declaró No Ha Lugar la *Querella* que presentó el recurrente por falta de jurisdicción e insuficiencia de prueba.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 8 de abril de 2024, el señor Feria presentó una *Querella* en contra del Consejo de Titulares del Condominio Mar de Isla Verde (Consejo de Titulares o el recurrido).[1] Allí, alegó que el Consejo de Titulares pintó una serie de estacionamientos en el área de rodaje

---

[1] *Véase*, págs. 1-7 del apéndice del recurso.

del sótano del condominio y que titulares se habían apropiado de estos. Indicó que, conforme a la información obtenida, estos estacionamientos no aparecían en la escritura matriz, ni en las escrituras individuales de estos titulares. No obstante, señaló que, en su escritura sí aparecía la descripción de su estacionamiento y el precio de compra de este. Por lo cual, solicitó que se eliminara los estacionamientos en el área de rodaje del sótano. Además, argumentó que, de crearse estacionamientos comunes, que estos deberían sortearse y regirse por el Art. 41 de la Ley Núm. 129-2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1922m (Ley Núm. 129-2020).

El 20 de mayo de 2024, el Consejo de Titulares presentó la *Contestación a la Querella, Solicitud de Desestimación por Falta de Jurisdicción sobre la materia.*[2] Alegó que, el área común de rodaje se comenzó a utilizar por el Consejo de Titulares para estacionamientos hace más de dos décadas. Así, sostuvo que conforme al Art. 65 de la Ley Núm. 129-2020, 31 LPRA sec. 1923j, el señor Feria tenía un término de dos (2) años para presentar la querella de epígrafe. Ante ello, razonó que los hechos aludidos en la *Querella* estaban prescritos, y como resultado, el DACo carecía de jurisdicción sobre la materia para atenderla. Por lo cual, solicitó al DACo que desestimara la acción de epígrafe e impusiera gastos y costas al señor Feria.

Así las cosas, el 20 de febrero de 2025, el DACo celebró una vista administrativa a la cual comparecieron ambas partes. Según dispone el DACo en el dictamen recurrido, las partes en la vista expresaron que no tenían objeción que el caso se sometiera por expediente. Así pues, evaluados los documentos que obran del expediente, el derecho aplicable y los argumentos de las partes, el

---

[2] Id., págs. 37-43.

14 de marzo de 2025, el DACo emitió una *Resolución Sumaria* que se notificó el 17 de marzo de 2025.[3] En primer lugar, realizó las siguientes determinaciones de hechos:

1. La querella fue radicada contra el Consejo de Titulares Condominio Mar de Isla Verde.

2. La querella lee de la siguiente manera:
   "Aparentemente en alguna ocasión el Consejo de Titulares pintó una serie de estacionamientos en el área de rodaje del sótano del edificio y desde entonces una serie de titulares se han apropiado de los mismos. De acuerdo con la información obtenida estos estacionamientos no aparecen en los planos originales ni en la escritura matriz ni en las escrituras individuales de estos titulares a diferencia de la mía donde se describe el estacionamiento, así como la descripción del y precio de la compra del mismo.

   En adición en el Boletín Informativo del Consejo de Titulares de enero 2024 la junta de directores confirmó que:

   "Nunca en la historia se ha hecho un sorteo para los mismos en MIV. Lo anterior en violación al artículo 41. Ley 129 del 2020.

   Los remedios solicitados son:

   A) Se eliminen los estacionamientos en el área de rodaje del sótano los cuales consideramos ilegales de acuerdo con los documentos.

   B) De cumplirse con la Ley y los Reglamentos vigentes de poder crearse estos estacionamientos comunes los mismos deberían sortearse y regirse por la Ley de Propiedad Horizontal incluyendo, pero no limitado al artículo 41 de la Ley 129 del 2020"

3. Que la parte querellante advino titular mediante "Escritura Numero Noventa y Cuatro" sobre "Escritura de Compraventa de Apartamentos de Propiedad Horizontal", otorgada el 27 de agosto de 1975.

4. Del "Boletin Informativo Condominio Mar de Isla Verde Mes de Enero de 2024" en cuanto al asunto los estacionamientos se expuso lo siguiente:

   "Los de la junta se agenciaron los estacionamientos soterrados alquilados y a sus amigos del alma, obviando el sorteo"

   "Ningún miembro de la junta tiene estacionamiento alquilado. Además, nunca en la historia se ha hecho sorteo para los mismos en MIV (la actual) se está asesorando legalmente para atender con prontitud, no

---

[3] Íd., págs. 182-189.

tan solo el asunto de los espacios alquilados, sino la certificación de que la vía de rodaje cumple con los requisitos de espacios mínimos para el flujo vehicular; y el posible proceso de sorteos. Por otro lado, la Ley de Propiedad Horizontal establece nuevas regulaciones en la tenencia de un tag comunal para todo titular que tenga un tag privado. Modo esto ha surgido debido al planteamiento que un titular ha presentado formalmente y muy probablemente utilizará su derecho de acudir a los foros pertinentes. Mejorar los procesos conlleva disciplina y consistencia en la toma de decisiones. En ese camino estamos."

5. El informe pericial, en lo pertinente, dispone la siguiente manera:

"Parámetros en el Diseño de Estacionamiento y Evaluación"

Los estándares para el diseño y operación de estacionamientos requieren:

Las áreas de estacionamiento de vehículos se diseñarán en forma funcional, esto es, para que cualquier vehículo pueda moverse sin que se vea impedido de hacerlo por otros vehículos estacionados. (Reglamento Conjunto OGPe Sección 8.5.2.1 a)

El ancho mínimo para el "Driveway" (vía de circulación para vehículos) recomendado es de 22' a 24' para estacionamientos, a 90 grados (perpendicular) a la vía. (The Dimensions of Parking 4th Edition- Urban Land Institute). El ancho actual es de 13'-0".

El ancho mínimo para la hilera de estacionamientos a 90. Grados (perpendicular) a la vía. (The Dimensions of Parking 4th Edition- Urban Land Institute). El ancho actual medido es de aproximadamente 31'-0.

Recomendaciones

Basado en la evaluación de data obtenida con los estándares de diseño para estacionamiento podemos establecer que el ancho actual del "Driveway" de (13'-0") es insuficiente y no funcional para los estacionamientos a grados (S-3 a S-19) de la hilera Este de Piso de Sótano del Cond. Mar de Isla Verde)"

Luego, a base de estas determinaciones de hechos y el derecho aplicable, declaró No Ha Lugar la *Querella* por falta de jurisdicción e insuficiencia de prueba. En primer lugar, realizó un análisis del Art. 65 de la Ley Núm. 129-2020, *supra*, y concluyó lo siguiente:

De la propia querella del querellante hizo una alegación a los efectos que "aparentemente en alguna ocasión el consejo de titulares pintó una serie de estacionamientos en el área de rodaje del sótano del edificio y desde entonces una serie de titulares se ha apropiado de los

mismos". La alegación del querellante no está sostenida en prueba alguna y en un "aparentemente". De otra parte, no podemos perder de perspectiva que la adquisición del apartamento por el querellante data desde el 1975, y su reclamación la somete mediante querella el 10 de abril de 2024. No nos puso en posición de establecer que esta se radicó dentro de los términos establecidos en la Ley de Condominios.

Por otro lado, citó el Art. 41 de la Ley Núm. 129-2020, *supra,* y concluyó lo siguiente:

De la prueba no surge que ningún titular está haciendo uso de un espacio de estacionamiento que exceda cabida, y con ello privando a otro titular del disfrute efectivo de tal elemento común. Tampoco, que el número de espacios de estacionamiento con capacidad para acomodar un automóvil es menor al número de apartamentos y hubiese más titulares interesados en ocuparlos. Por lo cual no entendimos probada violación al referido Art. 41.

Inconforme con este dictamen, el 7 de abril de 2025, el señor Feria presentó una *Urgente Solicitud de Reconsideración.*[4] Transcurrido el término que provee la ley sin que el DACo se expresara en cuanto a la solicitud de reconsideración, el 22 de mayo de 2025, el señor Feria presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**Erró el Departamento de Asuntos del Consumidor al declarar No Ha Lugar la querella por falta de jurisdicción sobre la materia, al concluir incorrectamente que la acción estaba prescrita conforme al Artículo 65 de la Ley Núm. 129-2020, sin evaluar adecuadamente la prueba que surge del expediente administrativo y sin considerar que la conducta impugnada consiste en una ocupación continua e ilegal de elementos comunes, expresamente admitida por la junta, y que no puede ser convalidada por el paso del tiempo en violación al debido proceso administrativo y la Ley Núm. 129-2020.**

**Erró el Departamento de Asuntos del Consumidor al declarar No Ha Lugar la querella al concluir incorrectamente que la prueba presentada era insuficiente para sostener la reclamación. Sin evaluar adecuadamente la prueba admitida en el expediente, especialmente el Informe Técnico de Acceso a Estacionamientos estipulado por ambas partes – y que no fue objetada ni controvertida**

---

[4] Íd., págs. 190-205.

**por el querellado, en violación al debido proceso administrativo y la Ley Núm. 129-2020.**

Atendido el recurso, el 27 de mayo de 2025, emitimos una *Resolución* concediéndole a la parte recurrente hasta el 30 de mayo de 2025 para que presentara la *Resolución Sumaria* emitida por el DACo en original en todas sus partes. De igual forma, le concedimos a la parte recurrida hasta el 11 de junio de 2025 para que presentara su posición en cuanto al recurso.

Por otro lado, el 28 de mayo de 2025, emitimos una *Resolución* ordenándole al DACo que, en un término de cinco (5) días, contados a partir de la notificación de esta resolución, presentara copia oficial del expediente administrativo C-SAN-2024-0018525.

En cumplimiento con nuestra orden del 28 de mayo de 2025, el DACo presentó una copia completa del dictamen recurrido. Además, oportunamente, el DACo presentó la copia oficial del expediente administrativo C-SAN-2024-0018525. Sin embargo, la parte recurrida no presentó su postura en cuanto al recurso en el término concedido para ello. Por lo tanto, declaramos perfeccionado el recurso y estando en posición de resolver, procedemos a así hacerlo. *Veamos.*

II.

**-A-**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a

favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

La Ley Núm. 104 de 25 de junio de 1958, según enmendada, mejor conocida como *Ley de Condominios* preceptuaba todo lo relativo al régimen de propiedad horizontal. Sin embargo, esta fue derogada por la Ley Núm. 129-2020, *supra,* aplicable al presente caso. Dicha Ley se creó con el fin de establecer un régimen jurídico

atemperado a los cambios sociológicos que ha experimentado nuestro país y para facilitar la vida en convivencia. Exposición de Motivos, Ley Núm. 129-2020, *supra.*

En lo pertinente al caso de autos, por virtud del Art. 65 de la referida ley, 31 LPRA sec. 1923j, se le faculta al DACo para adjudicar querellas relacionadas con acciones de impugnación que se presenten por los titulares de un condominio con al menos un apartamento de uso residencial en contra del Consejo de Titulares. Particularmente, el artículo antes descrito dispone lo siguiente:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
>
>   a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>   b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>   c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
>
> Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador. (Énfasis suplido).
>
> […]
>
> Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.
>
> En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente

Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley. (Énfasis suplido).
[...]

En cuanto a los acuerdos del Consejo de Titulares, el inciso (d) del Art. 52 de la Ley Núm. 129-2020, *supra,* establece lo siguiente:

Los acuerdos del Consejo se reflejarán en un libro de actas. Las actas contendrán necesariamente el lugar, fecha y hora de la asamblea, asuntos propuestos, número de titulares presentes, con expresión de sus nombres, forma en que fue convocada la asamblea, texto de las resoluciones adoptadas, los votos a favor y en contra y las explicaciones de votos o declaraciones de que cualquier titular quiera dejar constancia.

III.

En su primer señalamiento de error, el señor Feria sostuvo que el DACo incidió al declarar No Ha Lugar la *Querella* por falta de jurisdicción sobre la materia, al concluir que la acción estaba prescrita conforme al Art. 65 de la Ley Núm. 129-2020, *supra.* Argumentó que el DACo no evaluó adecuadamente la prueba que obraba del expediente administrativo. Adujo que la conducta impugnada consistía en una ocupación continua e ilegal de elementos comunes, expresamente admitida por la Junta de Directores. Indicó que, dicha conducta no podía ser convalidada por el paso del tiempo ya que ello violentaba el debido proceso administrativo y la Ley Núm. 129-2020, *supra.*

Por otro lado, en su segundo señalamiento de error, el recurrente planteó que el DACo erró al concluir que la prueba presentada era insuficiente para sostener la reclamación. Sostuvo que el DACo no evaluó la prueba admitida en el expediente, especialmente el Informe Técnico de Acceso a Estacionamientos

estipulado por ambas partes. Afirmó que ello violentó el debido proceso administrativo y la Ley Núm. 129-2020, *supra*.

En el caso de autos, el señor Feria sostuvo que no existía fundamento legal ni evidencia en el expediente que permitiera concluir que la *Querella* presentada ante el DACO estaba prescrita conforme al Artículo 65 de la Ley Núm. 129-2020, *supra*. Manifestó que este artículo disponía un término prescriptivo de dos (2) años para impugnar actos, omisiones o decisiones de la Junta o del Consejo de Titulares que infringieran la Ley, la escritura matriz o el reglamento, siempre que tales actos hubiesen sido debidamente notificados según dispone la ley.

Argumentó que, el expediente demostraba que nunca se había notificado formalmente acuerdo, decisión o acción alguna relacionada con la creación de estacionamientos paralelos en el área de rodaje. Indicó que tampoco constaba en autos acta de asamblea, votación, resolución escrita ni ningún otro mecanismo válido de adjudicación de esos espacios, conforme exige la Ley Núm. 129-2020, *supra*. Añadió que, incluso, la propia Junta de Directores del Condominio reconoció en el boletín informativo de enero del año 2024, anejado a la querella, que jamás se había celebrado sorteo alguno para esos espacios, y que por primera vez estaban recibiendo asesoría legal para evaluar la viabilidad del sorteo y la certificación del área de rodaje como espacio apto.

Planteó que, esa admisión oficial no solo interrumpió cualquier término prescriptivo, sino que confirmó que no había sido notificado ni tenía conocimiento formal del uso exclusivo impugnado. Además, señaló que la Junta admitió la omisión de un proceso requerido por ley (el sorteo) y la existencia de un uso irregular que aún continuaba. Por las razones antes expuestas concluyó que, el uso exclusivo de espacios comunes en el área de rodaje, sin autorización ni sorteo, constituía una violación continua

y sostenida del régimen de propiedad horizontal, y no un acto aislado. Sostuvo que esta naturaleza permanente impedía que operara la prescripción, ya que la infracción persistía activamente.

Como podemos colegir, el señor Feria sostuvo que en el presente caso no se había configurado la situación jurídica que activara el término de prescripción dispuesto en el Artículo 65 de la Ley Núm. 129-2020, *supra.* De conformidad con dicho artículo, los titulares en condominios con al menos un apartamento de uso residencial pueden presentar ante el DACo impugnaciones contra acuerdos, acciones u omisiones del Consejo de Titulares, la Junta de Directores o el administrador, siempre que dichas actuaciones: (a) sean contrarias a la ley, la escritura matriz o el reglamento del condominio; (b) resulten gravemente perjudiciales a los intereses de la comunidad o de un titular; o (c) resulten gravemente perjudiciales para algún titular sin que haya previsibilidad o obligación jurídica para soportarlo.

En cuanto a los plazos, el referido artículo establece que los acuerdos formales del Consejo deben ser impugnados dentro de treinta (30) días a partir de su notificación, y que en los casos en que se alegue violación a la ley, escritura matriz o reglamento, la acción prescribe a los dos (2) años desde la fecha de la acción, omisión o acuerdo, **siempre y cuando dicho acto haya sido debidamente notificado conforme a lo establecido por la ley.**

En el caso de autos, no existe en el expediente evidencia alguna de que se haya tomado un acuerdo formal por parte de la Asamblea o del Consejo de Titulares sobre los espacios de estacionamiento paralelos en el área de rodaje, ni mucho menos que el mismo haya sido notificado a los titulares. No consta en autos acta de asamblea, resolución adoptada, votación válida ni ningún otro mecanismo de decisión formal que cumpla con las disposiciones del Artículo 52(d) de la Ley 129-2020, *supra,* el cual requiere, entre

otros elementos, que las resoluciones se documenten en un libro de actas con expresión de los votos emitidos, el quórum presente y el texto íntegro del acuerdo.

Por el contrario, los hechos del caso y los documentos incorporados al expediente, incluyendo el Boletín Informativo emitido por la propia Junta en enero de 2024, confirman lo siguiente: (1) que nunca se ha realizado un sorteo o proceso de adjudicación formal para esos espacios; (2) que la Junta apenas está consultando asesoría legal para evaluar la legalidad de esos estacionamientos; y, por último (3) que la situación denunciada sigue en curso y no ha sido objeto de determinación formal alguna por parte del organismo competente dentro del condominio.

Bajo ese contexto, el término prescriptivo de dos (2) años previsto en el Art. 65 de la Ley núm. 129-2020, *supra*, no ha comenzado a transcurrir, ya que este solo se activa cuando existe una acción, omisión o acuerdo específico debidamente adoptado y notificado conforme a derecho. La ausencia total de un acuerdo formal impugnable implica, en derecho, que no existe evento detonante para el cómputo del término de prescripción. Más aún, el uso exclusivo de espacios comunes sin autorización formal o proceso de adjudicación válido constituye una infracción de carácter continuo y permanente. Tal como ha reconocido la jurisprudencia y la doctrina aplicable al régimen de propiedad horizontal, mientras persista una situación ilegal en violación a la ley y al reglamento del condominio, el agravio permanece vigente, y, por lo tanto, el término prescriptivo no puede considerarse iniciado ni consumado.

En consecuencia, concluimos que mientras no se haya adoptado un acuerdo formal del Consejo de Titulares o de la Junta de Directores sobre el asunto en controversia, no existe una base legal para que el DACo ejerza jurisdicción bajo el marco del Art. 65 de la Ley Núm. 129-2020, *supra*. La jurisdicción del DACo se limita

a adjudicar impugnaciones de actos ya consumados y debidamente notificados, no a evaluar situaciones hipotéticas, potenciales o en formación.

Aceptar lo contrario implicaría que el DACo estaría ejerciendo funciones consultivas o preventivas, ajenas a su mandato legal, interviniendo en la toma de decisiones internas del condominio antes de que estas se formalicen. Esta interpretación iría en contra del principio de legalidad que rige el ejercicio de su competencia. De este modo, hasta tanto la Junta de Directores no emita y notifique un acuerdo formal sobre la adjudicación o uso de los espacios comunes en cuestión, no ha nacido un acto impugnable, y por tanto, el DACo carece de jurisdicción activa para adjudicar la *Querella* presentada.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido bajo otro fundamento.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones